# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2159-24

ANGELA FOX,

     Plaintiff-Appellant,

v.

PARSIPPANY-TROY HILLS
BOARD OF EDUCATION,
ANGELINA FINNEGAN,
DR. ROBERT S. SUTTER,
and JEANNE GLADIS,

     Defendants-Respondents.

_____

> Argued May 7, 2026 – Decided July 22, 2026
>
> Before Judges Marczyk, Bishop-Thompson and Puglisi.
>
> On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0047-22.
>
> Juan C. Fernandez argued the cause for appellant (Fernandez Garcia, LLC, attorneys; Cynthia V. Fitzgerald and Juan C. Fernandez, on the briefs).

Kajal J. Patel argued the cause for respondents (Methfessel & Werbel, attorneys; Kajal J. Patel, on the brief).

PER CURIAM

Plaintiff Angela Fox began employment as a teacher for the Parsippany-Troy Hills Township School District (District) in 2011 and earned tenure in 2014. She claims, during the 2017-2018 school year, all the "violent" and "special needs" fifth grade students were assigned to her classroom. Due to anxiety and stress, plaintiff then took consecutive leaves of absence during the 2018-2019 and 2019-2020 school years. After defendant Parsippany-Troy Hills Board of Education (Board) filed sworn tenure charges against her, plaintiff resigned.

Plaintiff filed a complaint against defendants the Board, Principal Angelina Finnegan, Assistant Superintendent for Human Resources Dr. Robert S. Sutter, and Human Resources Manager Jeanne Gladis (collectively, Board defendants), alleging hostile work environment, disability discrimination, retaliation, aiding and abetting under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, and respondeat superior claims. She appeals from the February 7, 2025 order granting summary judgment to the Board defendants. We affirm.

## I.

### A.   The 2017-2018 School Year

We derive the relevant facts from the summary judgment motion record, viewing the facts in the light most favorable to plaintiff as the non-moving party. See Memudu v. Gonzalez, 475 N.J. Super. 15, 18-19 (App. Div. 2023).  During the 2017-2018 school year, plaintiff was assigned a classroom with several students requiring behavioral and special education support.  The classroom also included two co-teachers:  a special education teacher for reading and writing, and another for mathematics.  Additionally, a paraprofessional was present to assist a student with autism.

Plaintiff testified that she experienced stress and anxiety due to the behavior of three students with special needs in her classroom.  Her performance evaluations were generally positive and did not note any concerns about her handling of student behavior.  None of the students with special needs exhibited aggressive behavior toward plaintiff or threatened her.  During his deposition, Dr. Sutter testified that he was not aware of any issue between plaintiff and any student, or of plaintiff experiencing emotional distress related to a student.

Plaintiff claimed the school did not provide adequate support.  Specifically, her request for a code word to discreetly summon help was denied

A-2159-24

by Finnegan, who explained that she could call from the classroom to request assistance if needed. Plaintiff also claimed adverse interactions with Finnegan: not being included in grade-level meetings, lack of engagement, and a "dismissive" demeanor during the year.

Plaintiff claimed that she experienced anxiety and panic attacks. She was diagnosed with post-traumatic stress disorder (PTSD) by a licensed clinical social worker, but no specific medication was recommended. On July 31, 2018, plaintiff emailed Finnegan, Gladis, and Dr. Sutter to request a four-month leave of absence for the 2018-2019 school year.

A series of emails was exchanged between plaintiff and the District. Gladis promptly emailed plaintiff the "Certification of Health Care Provider for Employee's Serious Health Condition" form in accordance with the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654, to be completed by her treating provider. Plaintiff then revised her leave request to cover the entire school year.

Dr. Sutter responded that the District would meet with employees to discuss and plan leave options, including the use of the employee's accumulated sick leave and unpaid FMLA leave. He testified all communication in August 2018 was by email because plaintiff declined to meet him in person. Another

A-2159-24

request was made for the certification so plaintiff's leave of absence could be processed. Plaintiff was also informed that her twelve-week FMLA medical leave would begin on August 30, her accumulated sick days would be exhausted on September 17, and she would be placed on unpaid leave starting September 18.

Later that same afternoon, Dr. Sutter sent another email to plaintiff stating her medical leave required Board approval and that no medical documents or written request had been received. He advised plaintiff that she was entitled to twelve weeks of FMLA leave, but any additional leave under the Parsippany-Troy Hills Education Association agreement required a separate request, distinct from maternity and childcare leave.

Plaintiff submitted a completed certification on August 29, signed by an advanced practice nurse. It stated: she was treated on August 28; her symptoms had begun a year earlier and worsened in June 2018; and she was five weeks pregnant and receiving treatment. The leave request cited "severe anxiety and mood symptoms due to work stressors," which rendered her unable to teach from August 30, 2018, to June 30, 2019. The nurse recommended a leave of absence to "focus on managing and improving symptoms" and "decrease [the] risk to

A-2159-24

pregnancy." Plaintiff subsequently requested leave for the entire school year without submitting any supporting documentation.

B.    The 2018-2019 School Year

The District tentatively placed plaintiff on FMLA leave from August 20 to November 26, 2018 pending receipt of medical documentation. Dr. Sutter requested documentation from her provider and stated she was expected to return to work after her FMLA leave was exhausted. At that time, the District determined it would not recommend an extension beyond November 26, and plaintiff may be required to undergo a fit-for-duty examination before her return.

On September 13, the Board approved plaintiff's FMLA leave from August 30 to September 17, using her accumulated sick leave, followed by unpaid medical leave from September 18 to November 21. The District also advised plaintiff that she was required to pay her healthcare contributions while on FMLA leave and during any additional leave.

On November 1, 2018, Dr. Sutter informed plaintiff that he had recommended to the superintendent that she undergo a fit-for-duty examination by a psychologist or psychiatrist and the Board would vote on this recommendation at its November 15 meeting. The Board approved the fit-for-duty examination and granted plaintiff a leave of absence from August 30 to

October 1, 2018, using her accumulated sick leave, personal days, family illness days, followed by an unpaid medical leave of absence from October 2 to November 21. After plaintiff exhausted her FMLA leave, the Board approved additional unpaid leave from November 26 to December 7.

On December 4, 2018, plaintiff underwent the fit-for-duty examination with Dr. Mario Finkelstein, reporting Finnegan was "very intimidating," "very condescending" and "very difficult to work with . . . during her last school year." She also reported she had a "very difficult student who acted out in class" and, despite meeting with Finnegan, she did not receive assistance. Plaintiff claimed, after this meeting, her subsequent interactions with Finnegan were not pleasant.

Dr. Finkelstein diagnosed plaintiff with "[u]nspecified anxiety disorder[,] unspecified trauma-stressor related disorder[,] rule out anxiety disorder due to a medical condition[—]pregnancy[,] [and] occupational problems" based on a review of the records and evaluation. He opined plaintiff was unable to return to teaching at that time and stated it was "unlikely" she could return before the end of the school year. Dr. Finkelstein also noted plaintiff was five months pregnant, and the psychiatric nurse practitioner was concerned about her anxiety level and its potential impact on her pregnancy.

7

Plaintiff was on leave from December 4, 2018, to June 2019, but again did not provide any medical documentation. The Board extended plaintiff's unpaid leave through the end of the 2018-2019 school year, contingent upon her providing periodic updates on her medical treatment and ability to return to work. As a result, Dr. Sutter informed plaintiff that she was expected to return for the 2019-2020 school year, and the District might require another fit-for-duty examination before her return.

C.    The 2019-2020 School Year

On July 11, 2019, Dr. Sutter instructed plaintiff to provide documentation from her treating therapist regarding her ability to return to work for the 2019-2020 school year, and the failure to submit this report by July 19 would be considered job abandonment. She was also informed that a fit-for-duty examination would be required if she was not cleared to return.

On July 18, plaintiff informed Dr. Sutter she was still undergoing treatment and consented to another examination but provided no medical documentation. In response, Dr. Sutter reminded her that her approved medical leave was contingent on providing periodic updates and confirmed she would need another examination due to the lack of documentation. Plaintiff

A-2159-24

acknowledged she had no reports to provide, had not been cleared to return to work, and again consented to the examination.

The second fit-for-duty examination was conducted in August 2019. In his August 29, 2019 report, Dr. Finkelstein noted plaintiff claimed readiness to return to work but he raised concerns because she had stopped treatment and medication in April 2019, she did not provide her treatment records, and he was unable to verify her care. He cited her vulnerability to postpartum depression and anxiety and the impact of a new principal. Dr. Finkelstein concluded she was not fit to return, and the Board extended her unpaid leave from August 28 to December 20.

Dr. Sutter met with plaintiff on September 23 and offered her the opportunity to have union representation present, but she declined, stating she did not feel "comfortable." According to his testimony and a confirmatory letter, plaintiff was informed she had not been cleared to return, had not followed Dr. Finkelstein's prior recommendations, and needed to provide medical documentation. Plaintiff was also advised that her continued absence was "disruptive to the classroom and the school's operation," requiring a long-term substitute teacher on short notice.

9

Plaintiff was also informed, due to her lack of compliance and clearance, the Board might pursue tenure charges based on incapacity—her inability to teach—and conduct unbecoming—her failure to comply with the conditions of her prior leave. Dr. Sutter again directed plaintiff to follow Dr. Finkelstein's recommendations, comply with the District's directives, and submit documentation.

On December 11, 2019, Dr. Finkelstein conducted a third fit-for-duty examination. In a telephone conversation with plaintiff's psychotherapist, he was advised she had stopped treatment in early 2019. However, plaintiff reported that she had been receiving weekly treatment since October 2019. Her psychiatrist revealed plaintiff was "very anxious" about returning to work. Dr. Finkelstein's report did not recommend that plaintiff return to work. He recommended plaintiff continue her psychiatric and psychotherapy treatment and be reassessed after six months of verifiable treatment.

Although plaintiff did not provide medical documentation from August through December 2019, the Board placed her on unpaid administrative leave from January 2 through June 30, 2020. On January 10, Dr. Sutter met with plaintiff to address her continued noncompliance and reiterated she was not

A-2159-24

cleared to return to work. He again informed plaintiff of the option to resign, noting the Board might file tenure charges against her.

That afternoon, plaintiff emailed Dr. Sutter stating: "[I]t is my understanding that the Board is no longer interested in my recovery. As you stated, my options are either resign or face tenure charges. Given those two options, I ask that all further communications go through my attorney, . . . ."

Plaintiff relied on a January 20, 2020 psychiatric report by Dr. William Head for her workers' compensation claim, alleging her PTSD from the 2017-2018 school year was caused by Finnegan and her fifth-grade students. She reported worsening panic attacks since June 2018 and stated Dr. Finkelstein had not cleared her to return. Dr. Head found plaintiff may have an underlying anxiety condition unrelated to work, and opined she was temporarily disabled from teaching, but recommended she "try" to return in spring 2020.

On July 30, 2020, the Board filed sworn tenure charges against plaintiff, citing incapacity, unbecoming conduct, insubordination, and other just cause for termination. Plaintiff denied the allegations in her response. She resigned effective October 29, 2020, citing incapacity due to work-related PTSD.

On January 10, 2022, plaintiff initiated suit against the Board defendants alleging LAD violations and common law claims. The Board defendants

moved for summary judgment arguing plaintiff failed to establish a prima facie case for each claim. In an order accompanied by a statement of reasons, the court granted the Board defendants' motion, dismissing plaintiff's complaint in its entirety.

## II.

On appeal, plaintiff argues the motion court erred in granting summary judgment to the Board defendants, claiming she established prima facie cases of hostile work environment, discrimination, and retaliation. She contends the court improperly resolved factual disputes, disregarded evidence, and improperly rejected her hostile work environment continuum theory, disability discrimination, respondeat superior, and aiding and abetting claims.

We review the motion court's grant of summary judgment de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024). We view the evidence in the light most favorable to the non-moving party to determine whether no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). Thus, "[s]ummary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018).

A.    Hostile Work Environment Claims

Plaintiff renews her argument that she was subjected to a hostile work environment beginning when the District assigned all the "violent" and "special needs" fifth grade students to her classroom without any support. She contends this continued after her PTSD diagnosis, requiring ongoing medical treatment and leave. She claims the motion court erred in finding she did not establish a valid hostile work environment claim. The court found plaintiff failed to show severe or pervasive conduct or a connection to her protected status, and her discussion with Dr. Sutter was intended to help her to decide whether to resign or face possible tenure charges.

It is well established the LAD prohibits an employer from discriminating in conditions of employment that creates a hostile work environment. N.J.S.A. 10:5-12(a); Rios v. Meda Pharm., Inc., 247 N.J. 1, 9 (2021). To assert a prima facie claim of hostile work environment, a plaintiff must show "the complained-of conduct:  (1) would not have occurred but for the employee's [protected

status;] and it was (2) severe or pervasive enough to make a (3) reasonable [person] believe that (4) the conditions of employment [have been] altered and the work environment is hostile or abusive." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 17 (2017) (quoting Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993)). When determining whether the alleged conduct was severe or pervasive, "courts must consider the cumulative effect of the various incidents, bearing in mind 'that each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created may exceed the sum of the individual episodes.'" Rios, 247 N.J. at 11 (quoting Lehmann, 132 N.J. at 607).

Plaintiff's arguments are unconvincing. Even accepting her claim that all the "violent" and "special needs" fifth grade students were assigned to her classroom, there is no evidence their placement was related to her protected status. Nor has she demonstrated that the students' assignment or Finnegan's conduct was severe or pervasive. The record lacks competent evidence that these actions would cause a reasonable person to believe she worked in a hostile environment.

Plaintiff also claims this hostile work environment persisted during her leaves of absence, arguing Dr. Sutter disregarded her medical condition by

14

"threatening" her with tenure charges and intimidating her into resigning. However, the record does not support this claim. Despite repeated reminders that her approved leaves were contingent on medical updates, plaintiff failed to provide the required documentation. Her noncompliance led to three fit-for-duty examinations. Nonetheless, the Board approved her various leaves.

Moreover, the contact between the District and plaintiff was about her leaves and the fit-for-duty examinations. Plaintiff was given the opportunity to have union representation during meetings with Dr. Sutter but declined to do so. See N.J.S.A. 34:13A-1 to -43; see also Teamsters Loc. 97 v. State, 434 N.J. Super. 393 (App. Div. 2014). No genuine issue of material fact exists to support plaintiff's claim for a hostile work environment.

Plaintiff alternatively asserts a hostile work environment claim under a continuum theory, alleging it began with the assignment of students to her classroom in 2017 and continued through the filing of tenure charges in 2020 while she was on leave. She claims this violated District policy, although she cites no specific Board policy or regulation, and argues the court failed to consider the cumulative effect of the Boards' actions, contending this issue should be decided by a jury.

A-2159-24

Under the continuing violation doctrine, "a plaintiff may pursue a claim for discriminatory conduct if [they] can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period." Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 6-7 (2002) (citing West v. Phila. Elec. Co., 45 F.3d 744, 754-55 (3d Cir. 1995)). To establish a continuing violation based on a series of discriminatory acts, a plaintiff must show that: "(1) at least one allegedly discriminatory act occurred within the filing period and (2) the discrimination is 'more than the occurrence of isolated or sporadic acts of intentional discrimination' and is instead a continuing pattern of discrimination." Bolinger v. Bell Atl., 330 N.J. Super. 300, 307 (App. Div. 2000) (quoting Harel v. Rutgers, State Univ., 5 F. Supp. 2d 246, 261 (D.N.J. 1998)).

The alleged adverse actions—such as student placement and the reminder for periodic updates in response to plaintiff's leave requests or the fit-for-duty examinations—are discrete acts and are not bound by a pattern of continuing discrimination. See Roa v. Roa, 200 N.J. 555, 566 (2010). Even when aggregated, none of the alleged hostile acts prior to January 2020 rise to the level of a hostile work environment. See Alexander v. Seton Hall Univ., 204 N.J. 219, 229 (2010). Having reviewed the record in the light most favorable to

plaintiff, we conclude the continuing violation doctrine does not apply to her hostile work environment claim.

Since plaintiff has not made a prima facie case against the Board, we do not disturb the dismissal of her claims for respondeat superior and aiding and abetting a hostile work environment against the individual defendants. See Cicchetti v. Morris Cnty. Sheriff's Off., 194 N.J. 563, 594 (2008).

B.    Disability Discrimination Claim

Plaintiff renews her failure to accommodate argument, claiming the District refused to accommodate her treatment schedule and violated its own policy. However, the motion court found the District's accommodations were reasonable and in good faith, and that no genuine dispute of fact required submission to a jury.

"The LAD prohibits employment discrimination on the basis of a disability." Richter v. Oakland Bd. of Educ., 246 N.J. 507, 524 (2021) (quoting Potente v. Cnty. of Hudson, 187 N.J. 103, 110 (2006)). "'[O]ur courts have uniformly held that the [LAD] . . . requires an employer to reasonably accommodate an employee's' disability." Ibid. (second alteration in original) (quoting Royster v. N.J. State Police, 227 N.J. 482, 499 (2017)).

17

"[T]o establish a failure-to-accommodate claim under the LAD," an employee must prove they "(1) 'qualif[y] as an individual with a disability, or [] is perceived as having a disability . . . '; (2) ['are] qualified to perform the essential functions of the job, or w[ere] performing those essential functions, either with or without reasonable accommodations'; and (3) 'that [the employer] "failed to reasonably accommodate [their] disabilities."'" Richter, 246 N.J. at 526 (second alteration in original) (quoting Royster, 227 N.J. at 500).

The record demonstrates plaintiff does not satisfy the first and second elements. Despite her assertions to the contrary, she has not been capable of teaching since 2018, as evidenced by Dr. Finkelstein's three reports. See Viscik v. Fowler Equip. Co., 173 N.J. 1, 16-18 (2002).

As to the third element, we reject plaintiff's argument that the District failed to accommodate her treatment schedule. The record shows plaintiff provided no medical documentation beyond the initial certification, and the Board engaged in the interactive process, granting various leaves from 2018 to 2020. Accordingly, the Board did not engage in any discriminatory conduct, as plaintiff's health issues prevented her from teaching. See Delvecchio v. Twp. of Bridgewater, 224 N.J. 559, 572 (2016) (citing N.J.S.A. 10:5-4.1).

C.    Retaliation

The LAD prohibits retaliation against any person for seeking legal advice regarding rights under the act. N.J.S.A. 10:5-12(d). To establish a prima facie retaliation claim, the plaintiff must present evidence of each of its elements: "(1) they [are] engaged in a protected activity known by the employer; (2) thereafter their employer unlawfully retaliated against them; and (3) their participation in the protected activity caused the retaliation." Rios v. Meadowlands Hosp. Med. Ctr., 463 N.J. Super. 280, 287 (App. Div. 2020) (quoting Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 125 (2008)).

Plaintiff must show defendants unlawfully retaliated against her for retaining counsel and committed the adverse employment action of "threatened" tenure charges. In making this claim, she relies solely on her claim that Dr. Sutter was displeased with her attorney's involvement, barred her attorney from meetings, and threatened tenure charges if she did not resign. The motion court found no causal link between the protected activity and any adverse employment action, concluding the tenure charges were unrelated to the protected activity.

We are unpersuaded by plaintiff's unsupported claim of retaliation regarding her retaining an attorney. "'[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome' summary judgment motions."

Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 529 (App. Div. 2019) (quoting Puder v. Buechel, 183 N.J. 428, 440-41 (2005)). There was no communication between plaintiff, defendants, and her attorney that put defendants on notice plaintiff engaged in this protected activity; therefore, plaintiff has not met the first two elements.

Plaintiff does not establish the third element, adverse employment action, despite claiming she was forced to resign after the Board filed tenure charges. Merely discussing possible tenure charges is not an adverse action. Beasley v. Passaic Cnty., 377 N.J. Super. 585, 609-10 (App. Div. 2005) ("'Retaliatory action does not encompass action taken to effectuate the discharge, suspension or demotion.'") (quoting Keelan v. Bell Commc'ns Rsch., 289 N.J. 531, 539 (App Div. 1996)). The Board reasonably filed tenure charges due to plaintiff's indefinite leave and lack of documentation. After a de novo review, we conclude the Board had a legitimate, non-discriminatory reason and undue hardship, as plaintiff's prolonged absence from the classroom disrupted students' learning, compromised instructional continuity, and required reliance on substitute teachers. See N.J.A.C. 13:13-2.5(b); Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252, 274 (App. Div. 1996). We affirm summary judgment in defendants' favor and the dismissal of plaintiff's retaliation claim under the LAD.

A-2159-24

We discern no genuine issue of material fact as to plaintiff's hostile work environment, disability discrimination, and retaliation claims. Plaintiff failed to present evidence establishing a prima facie case for each alleged LAD violation. Accordingly, we need not address the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), and adopted by our Supreme Court in Viscik, 173 N.J. at 13-15.

To the extent we have not discussed any of plaintiff's remaining arguments, we deem them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

21